CHARLES J. WEYL and others *vs.* CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY.

April 9, 1889.

**Railway—City Ordinance Limiting Speed of Trains.**—*Knobloch* v. *Chicago, Mil. & St. Paul Ry. Co.*, 31 Minn. 402, followed, upon the proof required to justify the declaration that the ordinance which limits the rate of speed of railway trains within the limits of the city of St. Paul is void, because in restraint of trade and unreasonable.

**Same—Accident at Road Crossing.**—Evidence in this case examined, and *held* insufficient to warrant a verdict and judgment for plaintiffs.

Appeal by defendant from a judgment of the municipal court of St. Paul.

*Flandrau, Squires & Cutcheon,* for appellant.

*Kueffner & Fauntleroy,* for respondents.

COLLINS, J.  The defendant owns and operates a line of double-track railway between the cities of St. Paul and Minneapolis. At the station called "Merriam Park," in the first-named city, there is a spur track running west of the station-house, terminating at the east line of Cleveland avenue, which avenue crosses appellant's tracks at right angles.  Upon this spur track, and near the avenue, there stood 10 or 12 box-cars at the time of the accident herein involved.  An employe of the plaintiffs, driving a pair of mules attached to a lumber-wagon, attempting to cross the tracks on Cleveland avenue, was caught by a locomotive drawing the fast-mail train, thrown out of the wagon, the wagon demolished, and the team so frightened that it ran away.  From a judgment based on the verdict of a jury in plaintiffs' favor the defendant appeals.

There is but one question in the case, and that is whether, from the admitted facts and his own version of the affair, the employe was guilty of contributory negligence, although the appellant insists that, upon the record, we should determine that an ordinance of the city of St. Paul, introduced in evidence by plaintiffs, which prohibits a greater rate of speed than four miles an hour within the city limits, is so manifestly unnecessary and unreasonable as to be void.  The

question is not before us.    It is true that the train which overtook plaintiffs' servant was running, within the limits, 28 miles an hour at least, and it is also true that defendant offered to show that at least 66 regular trains were running over this line of road each day and evening; that these trains carried upon an average 3,500 people; that, in addition to these trains, over 3,000 tons of freight had to pass every day; and that, if the ordinance in question and its counterpart in Minneapolis were complied with by the trainmen, two hours and ten minutes would be consumed in making the run from depot to depot, a distance of 10 miles.    The offer was not broad enough.    This same ordinance was held valid, *prima facie*, in *Knobloch* v. *Chicago, Mil. & St. Paul Ry. Co.*, 31 Minn. 402, (18 N. W. Rep. 106.)    It is not so palpably and manifestly unreasonable and oppressive, such an abuse of discretion and arbitrary exercise of the power of the city council, upon its face, as would justify the court in setting it aside.    An ordinance of this character may restrain trade, and yet be necessary and reasonable as a police regulation.    The rapid transaction of business by the railway company may be hindered and trammelled by an ordinance controlling and regulating the rate of speed with which railway trains may be sent over and through the streets and populous portions of our towns and cities, but, when necessary for the proper protection of life and property, the celerity and dispatch with which business may be accomplished is but secondary.    The proposition of counsel did not include an offer to show, nor was there any testimony tending to prove, that the locality in question was sparsely settled, and its streets of such a character and so little frequented as to render the ordinance unnecessary, and hence oppressive and void.    Upon the testimony, including that which could have properly been received under the offer, we fail to see that a stronger or different case than that of *Knobloch* v. *Chicago, Mil. & St. Paul Ry. Co.* was presented.    The appellant admits that its train was making at least 28 miles an hour when the accident occurred. It was therefore violating a presumptively valid ordinance, and must be held guilty of negligence.

· Our next inquiry is as to the alleged contributory negligence of the driver of the team.    The train was going west upon the north track,

while the team approached from the south.   So far as appears from
the record, there were no obstacles in the way, nothing to prevent a
clear view of the tracks for more than a mile east of Cleveland ave-
nue, except some box-cars on the side track, as before stated, and a
coal-shed; but that the appellant owned this shed, or was in any
way responsible for its location, does not appear.   The morning was
cold, and the mules upon a slow trot as they approached the tracks.
One of the plaintiffs testified that before the accident the animals had
no fear of the cars, but would stand up to any train, and allow it to
go past them.   The driver states that he had them under perfect
control, and as he came towards the crossing, with which he was
well acquainted, he looked three times in the direction of the coming
train, and did not see it; nor did he hear any signals, although it
seems to be well established that the whistle was sounded at the
usual place east of the station, and the bell rung from that time un-
til after the collision.   Just how far distant from the crossing the
driver was when he first inspected the tracks does not clearly appear.
He was at least 60 feet away when he looked a second time, while
his third attempt was made in the rear of the box-cars, and at a point
where it was impossible, because of the obstruction, to see any por-
tion of the tracks except such as was directly in his front.   The last
effort made was therefore useless.   We are unable to discover any
reason whatever for his failure to see the train from the places first
mentioned by the witness, for it was there (upon the straight track
which extended easterly from the avenue for more than one mile) and
in plain sight, unless hidden by some intervening object of which no
mention is made in the testimony.   It would seem that the driver
must have been inattentive, or he would have observed the coming
train when looking the second time.   But, if we should find an excuse
for apparent carelessness in not discovering its approach before he
drove behind the box-cars, we are met by the fact that the distance
in a direct line from these cars to the south or nearest rail of the
tracks used by the train which struck plaintiffs' wagon was at least
22 feet, and that after coming out upon this space the driver never
looked at all for impending danger.   As soon as he passed the end
of the box-cars, for a space of more than 22 feet, (depending upon his

distance from the end car when he emerged from behind it,) he commanded an unobstructed view of the tracks for a long distance easterly, and on one of them was the train which caused the mischief. If, then, he had looked, he would or ought to have seen it. The remaining question is, could his discovery at this time have been of value? Would it have prevented the disaster? From where he sat upon the wagon to the end of the pole did not exceed 13 feet. The mules were under full control, and were so accustomed to the cars that they would stand up to any train, and allow it to pass them. From this undisputed testimony, it is obvious that the team could have been halted easily and with perfect safety at a distance of nine feet from the tracks on which passed the train, had the driver been watchful and noticed it when first coming from behind the cars alleged to have obstructed his view. It is not a case, it must be remembered, where one with a fractious team finds himself suddenly placed in a situation where it is perhaps safer to proceed and attempt a crossing than to stop and endeavor to retreat, but one wherein it seems clear that, had the driver stopped his team in close proximity to the passing train, he would have done so with the utmost safety. We are of the opinion that, as the driver of the team contributed to appellant's negligence, the plaintiffs ought not to recover.

Judgment reversed.