JOHANNA DUGAN *vs.* ST. PAUL & DULUTH RAILROAD COMPANY.

June 5, 1890.

Railway—Negligence—Blowing Whistle.—*Held* that, upon the evidence, the question whether the blowing of a locomotive whistle by defendant's servants was, under the circumstances, negligent, was for the jury.

Same—Void City Ordinance Admitted in Evidence—Error held Fully Corrected by Instructions.—*Held, also,* that error in admitting in evidence a void city ordinance regulating the blowing of locomotive whistles was fully corrected by the court's subsequently instructing the jury that it was void, and that they should not consider it, but treat the case as if no ordinance had been passed, and then instructing them correctly as to the rules of law applicable to the case.

**Same—Different Rule where Evidence is of Facts.** —Such a case distinguished from one where incompetent evidence as to the *facts* has been once admitted, and subsequently withdrawn from the consideration of the jury.

Appeal by defendant from an order of the district court for St. Louis county, refusing a new trial after a trial before *Stearns, J.*, and verdict of $4,040 for plaintiff.

*Cash & Williams*, for appellant.

*Edson & Hanks*, for respondent.

MITCHELL, J.[1]   This was an action to recover damages for personal injuries caused by the alleged negligence of defendant.   The negligence complained of was blowing a locomotive whistle in the city of Duluth, in close proximity to some teams, one of which became frightened thereby, and ran away, and injured the plaintiff while in one of the streets of the city.   The complaint was framed with a view of alleging a cause of action for negligence both under an ordinance of the village (now city) of Duluth forbidding the blowing of such whistles within certain limits except for certain specified purposes, and also independently of the ordinance; the allegations being that the whistle was blown carelessly, negligently, wantonly, and recklessly, with frightful noise, at or near a crossing, and near a team then lawfully in a public highway.   While introducing his evidence, plaintiff's counsel evidently had in mind making out a case under the ordinance; yet all the evidence, except the ordinance itself, was relevant on the general question of negligence, without regard to any ordinance.   If there was prejudicial error in admitting the ordinance, the record discloses none; and the evidence was sufficient to justify the verdict.

Whether the whistle was blown, and whether it caused the team to run away which injured plaintiff, were, under the testimony, certainly, questions for the jury.   So, also, was the question whether, under the circumstances, the blowing of the whistle was negligent.   It is a matter of common knowledge that cars and locomotives cannot be moved without making certain noises, but blowing the locomotive

[1] Vanderburgh, J., took no part in this case.

whistle is not one of these ordinary and necessary noises, but is only used on certain occasions as a signal or warning. It is also true that, under certain circumstances, it may become absolutely necessary to blow the whistle as a warning to persons on the railway track, or as a signal to employes of the company while engaged in moving or making up trains, and that to refrain from giving the signal or warning, under such circumstances, even near public streets or crossings, would be positive negligence. It is also true that those engaged in running locomotives may often be required to be so intent in the performance of their duties that they cannot be on the lookout to see whether there are teams in such proximity as to be liable to be scared by the whistle. Doubtless, often the duty of looking out for this is on the drivers of the teams, and not on the engineer in charge of the locomotive. Still, such a noise on or near a public thoroughfare, in a town or city, is so liable to scare teams, and cause just such accidents as happened in this case, that a due regard for the rights of others requires that the whistle should not be blown in such a place without cause and recklessly. The evidence in this case tended to show that the whistle was, in this instance, blown sharply and loudly in a public place, near a number of teams lawfully standing in a public street, and that it was not blown as an alarm of fire, or as a warning to any person or thing on defendant's track. It is true it might have been necessary to blow it for some other purpose; but, as plaintiff offered evidence tending to negative the existence of those causes which most usually call for such a signal, and as the defendant did not attempt to prove the existence of any necessity for blowing it, but, on the contrary, adopted a line of defence (denying that it was blown at all) which negatived the idea of the existence of any such necessity, the question of negligence was certainly one for the jury.

The question whether the driver of the team which ran away left his team unguarded, if material at all, was also, under the evidence, one for the jury. But, even if he was negligent in this respect, it would simply be a case where the negligence of a third party contributed with that of defendant to cause the injury. Again, the most that can be claimed for the evidence as to plaintiff's contributory negligence is that it also presented a question for the jury. The fact that

she was not on the lookout for teams while in the unopened and un-used part of a street where teams never travelled, was certainly not negligence *per se;* and even if it be true that it was an act of tres-pass for this woman, in common with her neighbors, to occupy this untravelled and unopened part of the street as a place to keep wood, still this is wholly immaterial, as that fact in no way proximately contributed to her injury.

Hence the only important question in the case is whether the ad-mission in evidence of the ordinance, assuming that it was void, was prejudicial error.    It was admitted against defendant's objection, but, when the judge came to charge the jury, he expressly told them that it was not valid, and that they need not consider it, but place the case on the same ground that it would be if there was no ordi-nance; and he then proceeded, and charged fully and correctly on the law of the case, without reference to, and independently of, any ordinance.    Where improper evidence bearing upon the *facts* of a case has once been admitted, the courts are very slow to hold that the error is remedied by subsequently withdrawing it from the con-sideration of the jury, and will never do so unless it is very clear, from the nature of the case, that the party could not have been prej-udiced.    The reason for this is that it is usually impossible to say that the impression once made upon the minds of the jury by the objectionable testimony was wholly removed by its subsequent with-drawal, or by instructions from the court to disregard it.    But this is an entirely different case.    The ordinance was not offered to prove, and it did not tend to prove, any of the facts connected with the case, but merely to prove the rule of law applicable to it.    The only necessity for introducing such ordinances is that, unlike general stat-utes or laws, the courts do not take judicial notice of them.    The case is substantially the same as if a court should erroneously state to the jury that a certain statute was applicable to a case, or should give them any incorrect instruction as to the law, but should subse-quently retract it, by expressly and unequivocally telling them that it was wrong and should be disregarded, and then giving them correct instructions.    It has been repeatedly held that this is not prejudi-cial error, provided the court corrects its mistake in such clear and

v.43m—27

explicit terms that there is no danger of the jury being confused or misled by contradictory instructions. We can see no real distinction between such a case and the present one.

Order affirmed.