## The Chicago and Alton Railroad Company
### v.
## The City of Carlinville.

*Opinion filed December 16, 1902.*

1. ORDINANCES—*rule as to power of court to declare ordinance unreasonable.* If an ordinance is passed in pursuance of power expressly conferred by a statute which prescribes details, courts have no power to declare it invalid for unreasonableness; but if details are not prescribed, the question of the reasonableness of the ordinance is open to review by the courts.

2. RAILROADS—*details of legislation for regulating speed of trains are not prescribed.* The statutory grant of power to municipal corporations to regulate the speed of trains within corporate limits does not so prescribe the details of such legislation as to preclude the courts from considering the reasonableness of ordinances passed in pursuance of such power.

3. SAME—*an ordinance regulating speed is presumed to be reasonable.* An ordinance regulating the speed of trains, which conforms to the limitation prescribed by the statute, is presumed to be reasonable, and it is incumbent upon the railroad company seeking to avoid it to show affirmatively its unreasonableness.

4. SAME—*power of cities to regulate speed of trains.* Subject to the limitation that the speed of passenger trains shall not be limited to less than ten miles per hour and of other trains to less than six miles per hour, as provided by statute, the matter of regulating the speed of trains within the limits of incorporated cities and villages is left to the municipal authorities.

5. SAME—*speed ordinance is an exercise of police power.* The enactment of an ordinance regulating the speed of trains is an exercise of police power, and before a court can hold such an ordinance unreasonable, the want of necessity for such a measure for the public safety must be clearly made to appear.

6. SAME—*fact that ordinance retards rapid transportation does not render it unreasonable.* That a speed ordinance restrains trade and retards rapid transportation does not justify a court in holding it invalid, where the speed limit is not below that prescribed by the statute and it does not appear that the ordinance is unnecessary for the safety of the public.

7. SAME—*speed ordinance is not invalid as restricting inter-State commerce and transportation of mail.* An ordinance limiting the speed of trains within corporate limits cannot be declared invalid upon the ground that it imposes an unreasonable restriction upon inter-State commerce and the speedy transportation of the mails.

*Chicago and Alton R. R. Co.* v. *Carlinville,* 103 Ill. App. 251, affirmed.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. Robert B. Shirley, Judge, presiding.

Patton & Patton, (William Brown, of counsel,) for appellant:

It is not within the power of the General Assembly, under the pretense of exercising the police power of the State, to enact laws, not necessary to the preservation of the health and safety of the community, that will be oppressive and burdensome upon the citizen. *Railroad Co.* v. *Jacksonville,* 67 Ill. 37; *Lake View* v. *Tate,* 33 Ill. App. 78; 130 Ill. 247; 2 Elliott on Railroads, sec. 670; *Burg* v. *Railway Co.* 57 N. W. Rep. 680; *Meyers* v. *Railway Co.* 10 id. 896; *Evison* v. *Railroad Co.* 48 id. 6.

Where an ordinance is questioned, the burden is on the city to show authority for its passage. *Braceville* v. *Doherty,* 30 Ill. App. 645; *Schott* v. *People,* 89 Ill. 195.

The State may make reasonable regulations to secure the safety of passengers, even on an inter-State train while within its borders; but the State can do nothing which will directly burden or impede the inter-State traffic of the company or impair the usefulness of its facilities for such traffic. *Railroad Co.* v. *Illinois,* 163 U. S. 142; *Railway Co.* v. *Illinois,* 177 id. 514.

William H. Steward, City Attorney, and A. J. Duggan, for appellee:

Where the legislature, in terms, confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the constitution an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental powers of the corporation or of a grant of power general in its

nature. In other words, what the legislature says may be done cannot be set aside by the courts because they may deem it unreasonable or against sound policy. *Lake View* v. *Tate*, 130 Ill. 247; *Mason* v. *Shawneetown*, 77 id. 533; *Taylor* v. *Carondelet*, 22 Mo. 105; *Railway Co.* v. *Lake View*, 105 Ill. 207; Dillon on Mun. Corp. (4th ed.) secs. 994, 995; *Tudor* v. *Railroad Co.* 154 Ill. 129.

The city had the right to limit the speed of the train to ten miles per hour. *Railway Co.* v. *Duggan*, 42 Ill. App. 536; *Railroad Co.* v. *Haggerty*, 67 Ill. 113; *Railway Co.* v. *Deacon*, 63 id. 91.

The presumption is always in favor of the validity of a statute or ordinance passed in pursuance of competent legal authority. The burden of showing the invalidity of a statute or ordinance is upon him who asserts it, and the intendments will all be taken against him. *Harmon* v. *Chicago*, 140 Ill. 374; *People* v. *Cregier*, 138 id. 401.

The police power of the State, when exercised by the legislature in the passage of laws for the protection of life, liberty and property or laws for the general welfare, has no limitations or restrictions except such as are found in the constitution. The fact the law regulates trade, or in some degree operates as a restriction on the same, does not render it obnoxious to any constitutional provision. The legislature, for the safety, security and welfare of society, may control the acts of the governed, even as to the time and manner of performing labor and manner in which persons shall use their property, to prevent injury to others. *Hawthorn* v. *People*, 109 Ill. 302.

Mr. Justice Hand delivered the opinion of the court:

This was a suit brought by the appellee, against the appellant, before a police magistrate, to recover a penalty for a violation of the following ordinance of the city of Carlinville:

"Sec. 261. No railroad company, or conductor, engineer or other employee of such company managing or

controlling any locomotive engine, car or train upon any railroad track, shall run, or permit to be run, within the limits of said city, any passenger train or car at a greater rate of speed than ten miles per hour, nor any freight train or car at a greater rate of speed than six miles per hour, under a penalty, in either case, of not exceeding $25 for each offense."

A trial was had and judgment was rendered against the appellant, from which it appealed to the circuit court, where a jury was waived and a trial had before the court, which resulted in a judgment against the appellant for $5 and costs, which judgment has been affirmed by the Appellate Court for the Third District, and a further appeal has been prosecuted to this court.

The appellant objected to the introduction of said ordinance in evidence on two grounds: First, that said ordinance was unreasonable, and therefore void; second, that said ordinance is an unreasonable restriction upon inter-State commerce and an unnecessary hindrance to the speedy carrying of the United States mail, and in conflict with the constitution of the United States. The court overruled said objections and admitted the ordinance in evidence, to which ruling of the court the appellant excepted and has assigned the same as error in this court. The objections will be disposed of in the order in which they were made and are here presented.

The city of Carlinville is located upon the main line of the appellant's railroad and is about midway between the cities of Springfield and East St. Louis. It has a population of about 3600 and is the county seat of Macoupin county. The tracks of appellant run through the incorporated limits of the city from the north-east towards the south-west for about one mile and a quarter. The principal part of the city is located on the east side of its tracks, which cross four streets within the city, two of which are among the principal thoroughfares of the city. The city has the usual residences, stores, shops

and public buildings common to a county seat of its size, and a coal shaft, grain elevator and pickle factory are located within the city near the main line of appellant, which obstruct, to a considerable extent, the view of its tracks and approaching trains.  The "Alton Limited" is a fast train, which was equipped for the accommodation of through passengers between the cities of Chicago and St. Louis.  It makes but few stops, and runs in competition with similar trains operated between said points by the Illinois Central and Wabash railroads, which very nearly parallel its route.  The distance between Chicago and St. Louis by appellant's line is about two hundred and eighty miles, about sixty-five miles of which is within incorporated cities, towns and villages in the State of Illinois.  The distance between said cities by the other railroads referred to is about the same as that over appellant's line, but the Illinois Central and Wabash railroads have a less amount of track within the limits of incorporated cities, towns and villages.  The Alton Limited schedule time between Chicago and St. Louis is seven and three-fourths hours.  It carries the United States mail, and runs to make connection with railroad lines from the east and north-west entering and leaving Chicago, and from the west and south-west entering and leaving St. Louis, carrying through passengers and the United States mail.  It was admitted that the Alton Limited had been run by the appellant within the incorporated limits of the city of Carlinville at from fifty to sixty miles per hour, and at a prohibited rate of speed, and in violation of said ordinance, if said ordinance was valid and binding upon it.

The city of Carlinville is organized under the general law providing for the incorporation of cities and villages, and passed the ordinance in question under and by virtue of the power conferred upon it by that act, subject to the limitation imposed by the act in regard to fencing and operating railroads.  Paragraph 21 of section 1 of

article 5 of the general Incorporation act (Hurd's Stat. 1899, p. 275,) provides that cities shall have the right "to regulate the speed of * * * cars and locomotives within the limits of the corporation," and section 24 of the act in regard to fencing and operating railroads (Hurd's Stat. 1899, p. 1332,) provides "that no such ordinance shall limit the rate of speed, in case of passenger trains to less than ten miles per hour, nor in any other case to less than six miles per hour." Subject to the limitation that no ordinance shall be passed which limits the speed of a passenger train to less than ten miles per hour, and in any other cases to less than six miles per hour, the matter of regulating the speed of trains within incorporated cities and villages is left entirely to the municipal authorities. (*City of Lake View* v. *Tate*, 130 Ill. 247.) That cities and villages have the power, by ordinance, to regulate the speed of trains within their corporate limits is recognized by the courts of this country, so far as we have been able to discover, without exception, provided such regulation is reasonable. *Toledo, Peoria and Warsaw Railway Co.* v. *Deacon*, 63 Ill. 91; *Chicago, Burlington and Quincy Railroad Co.* v. *Haggerty*, 67 id. 113; *Meyers* v. *Chicago, Rock Island and Pacific Railroad Co.* 57 Iowa, 555; *Crowley* v. *Burlington, Cedar Rapids and Northern Railway Co.* 65 id. 658; *Whitson* v. *City of Franklin*, 34 Ind. 392; *C., C., C. & I. Ry. Co.* v. *Harrington*, 131 id. 426; *Weyl* v. *Chicago, Milwaukee and St. Paul Railway Co.* 40 Minn. 350.

In *Toledo, Peoria and Warsaw Railway Co.* v. *Deacon, supra*, on page 93 it is said: "Though the legislature has granted franchises to railway corporations, and authorized them to procure the right of way and operate their trains by the power of steam, yet they have not unlimited discretion in the regulation of the speed of trains. They cannot act recklessly and in disregard of the safety and rights of others. The State has reserved to itself the power to enact all police laws necessary and proper to secure and protect the life and property of the citizen.

Prominent amongst the rights reserved, and which must inhere in the State, is the power to regulate the approaches to and the crossing of public highways and the passage through cities and villages, where life and property are constantly in imminent danger by the rapid and fearful speed of railway trains. The exercise of their franchises by corporations must yield to the public exigencies and the safety of the community."

In *Chicago, Burlington and Quincy Railroad Co.* v. *Haggerty, supra,* an objection was made to the admission in evidence of an ordinance of the town of Camp Point prohibiting the running of trains within the town at a greater rate of speed than six miles per hour. On page 115 the court say: "It is contended that the ordinance is null and void because the town had no authority to pass such an ordinance, and because the company was expressly authorized by law to fix and regulate the rate of speed of trains upon its road. There is no grant of power to this town, in express terms, to regulate the rate of speed of railway trains passing through the town, but by its charter (Private Laws 1857, pp. 540, 541,) the board of trustees of the town have the power to declare what shall be considered as nuisances, and to prevent and remove the same, and to regulate the police of the town, and to make such ordinances as the good of the inhabitants of the town may require. Under these powers we think the town possessed the authority so to order the use of private property within its limits as to prevent its proving dangerous to the safety of the persons and property of citizens; and we view the ordinance in question as but a police regulation for the preservation of the safety of persons and property, the adoption of which was no more than a fair exercise of the police power vested in the town."

The books and reported cases seem to agree that courts may declare void an ordinance passed by a city or village by virtue of its implied powers, if, in the opin-

ion of the court, it is unreasonable; but when the ordinance is passed by express authority conferred upon the municipality by the legislature such power is not so clear, and there is conflict of authority upon that proposition. (*Burg* v. *Chicago, Rock Island and Pacific Railway Co.* 90 Iowa, 106.) The rule adopted in this State is, that where the ordinance is passed in pursuance of power expressly conferred by the legislature and the details of such municipal legislation are prescribed by the legislature, an ordinance passed in pursuance of such power cannot be held invalid by the courts as being unreasonable; but when the details of such legislation are not prescribed, an ordinance passed in pursuance of such power must be a reasonable exercise thereof or it will be pronounced invalid. (*City of Lake View* v. *Tate, supra; Hawes* v. *City of Chicago,* 158 Ill. 653; *Wice* v. *Chicago and Northwestern Railway Co.* 193 id. 351.) It is said in the *Tate case,* on page 252: "Where the power to legislate on a given subject is conferred and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power or it will be pronounced invalid." In *Hawes* v. *City of Chicago, supra,* Mr. Justice Baker, in speaking for the court, in discussing the question when a court may rightfully hold an ordinance unreasonable, on page 658 said: "Where the power to legislate on a given subject is conferred on a municipal corporation, yet if the details of such legislation are not prescribed by the legislature, there the ordinance passed in pursuance of such power must be a reasonable exercise thereof or it will be pronounced invalid." The *Hawes case* was cited in *Wice* v. *Chicago and Northwestern Railway Co. supra,* and the language thereof quoted with approval.

The legislature did not distinctly say what may be done by municipalities in regulating the speed of trains passing through their limits. It only said that the speed of trains should not be limited below a certain rate per

200—21

hour, and with that exception left the matter wholly
within the discretion of the municipal authorities, and
we think it clear the legislature did not prescribe the
details to be observed in the passage of an ordinance
regulating the speed of trains in their passage through
·incorporated cities and villages, and that the court has
the power to decide such an ordinance as this invalid if
it clearly appear that it be an unreasonable exercise of
such power. This ordinance, to be valid, must not, there-
fore, be unreasonable. The presumption, however, is in
favor of its validity and that it is reasonable, and it is
incumbent upon appellant to point out and show affirma-
tively wherein such unreasonableness consists. (*People* v.
*Cregier*, 138 Ill. 401.) Ordinances of the character of the
one under consideration are passed under and by virtue
of the police power, which has been defined, in general
terms, "as comprehending the making and enforcement
of all such laws, ordinances and regulations as pertain
to the comfort, safety, health, convenience, good order
and welfare of the public." (*Culver* v. *City of Streator*, 130
Ill. 238.) The determination of the question whether or
not the ordinance in question was reasonably necessary
for the protection of life and property within the city
was committed, in the first instance, to the municipal
authorities thereof by the legislature. When they have
acted and passed an ordinance it is presumptively valid,
and before a court would be justified in holding their ac-
tion invalid, the unreasonableness or want of necessity
of such a measure for the public safety and for the pro-
tection of life and property should be clearly made to
appear. It should be manifest that the discretion im-
posed in the municipal authorities has been abused by
the exercise of the power conferred, by acting in an arbi-
trary manner. (*Knobloch* v. *Chicago, Milwaukee and St. Paul
Railway Co.* 31 Minn. 402; *Evison* v. *Chicago, St. Paul, Minne-
apolis and Omaha Railway Co.* 45 id. 370.) The argument
of appellant amounts to but this: if this ordinance and

similar ordinances in the other municipalities along its line are valid and are enforced, its schedule time must be lengthened, the effect of which will be that it will be unable to give to its patrons the service which they demand and which its competitors offer them, and it can not successfully operate its road.  This may seem, in some degree, to be true; but a requirement that it stop its trains at railroad crossings and draw-bridges has the same effect, still such regulations are held valid.  The mere fact that an ordinance may operate to restrain trade or retard rapid transportation will not justify a court in holding an ordinance invalid regulating the speed of trains when the speed limit is not below that prescribed by the legislature, and when it does not clearly appear that such ordinance is unreasonable and unnecessary for the safety of the public and for the protection of life and property.  "An ordinance of this character may restrain trade and yet be necessary and reasonable as a police regulation.  The rapid transaction of business by the railway company may be hindered and trammeled by an ordinance controlling and regulating the rate of speed with which railway trains may be sent over and through the streets and populous portions of our towns and cities, but when necessary for the proper protection of life and property, the celerity and dispatch with which business may be accomplished is but secondary."  *Weyl* v. *Chicago, Milwaukee and St. Paul Railway Co. supra.*

In *Knobloch* v. *Chicago, Milwaukee and St. Paul Railway Co. supra,* which was an action for damages, the Supreme Court of Minnesota held an ordinance limiting the speed of trains within the city of St. Paul to four miles per hour not to be unreasonable, although the accident took place at a crossing in a sparsely settled portion of the city.  To the same effect is *Weyl* v. *Chicago, Milwaukee and St. Paul Railway Co. supra.*  The Court of Appeals of the State of New York, in *City of Buffalo* v. *New York, Lake Erie and Western Railroad Co.* 152 N. Y. 276, (46 N. E. Rep. 496,) held

an ordinance limiting the speed of trains in the city of Buffalo to six miles an hour reasonable. In *Whitson* v. *City of Franklin, supra,* the Supreme Court of Indiana held an ordinance limiting the speed of trains in the city of Franklin to four miles per hour reasonable. In *Larkin* v. *Burlington, Cedar Rapids and Northern Railway Co.* 85 Iowa, 492, the Supreme Court of Iowa sustained an ordinance prohibiting passenger trains from running at a higher rate of speed than ten miles per hour through the corporate limits of West Liberty, where it appeared the crossing at which the injury took place was three-fourths of a mile from the depot, the principal part of the town on the east side of the railroad, and the land upon the west side of the track used mainly for agricultural purposes.

The appellant has cited three cases, in each of which a speed ordinance was held invalid by reason of the limitation as to the time per hour in which trains were permitted to run within the corporate limits of a city: *Evison* v. *Chicago, St. Paul, Minneapolis and Omaha Railway Co. supra, Meyers* v. *Chicago, Rock Island and Pacific Railroad Co. supra,* and *Burg* v. *Chicago, Rock Island and Pacific Railway Co. supra.* In each of these cases the train was running through a sparsely settled section of the outskirts of the city, at a point where the court held there was no necessity that the speed of the train be decreased for the safety of the public or the protection of life and property. In each case (they being actions to recover damages) the ordinance was held void as applied to the particular place where the injury occurred, and not as to the entire ordinance, while here the ordinance is challenged as a whole. We have no doubt an ordinance may provide for different rates of speed upon the same line of railroad in different sections of a city or village, as one part thereof may run through a thickly settled section while another part may run through a sparsely populated section, where there are but few inhabitants and where

the possibilities that an injury to persons or property would occur would be extremely improbable. *City of Lake View* v. *Tate, supra.*

Taking into consideration the existing circumstances and conditions, the necessity for its adoption, the object sought to be accomplished and the effect upon the business of the appellant, we are unable to say the ordinance is unreasonable, but are of the opinion that it is a valid exercise of the police power by the city.

The next question which presents itself for consideration is, does the ordinance in question impose an unreasonable restriction upon inter-State commerce and the speedy transportation of the United States mail? We are of the opinion it does not. The ordinance was passed as a police regulation for the preservation of the safety of the public and the protection of life and property, and was no more than a fair exercise of the police power vested in the city. (*Toledo, Peoria and Warsaw Railway Co.* v. *Deacon, supra; Chicago, Burlington and Quincy Railroad Co.* v. *Haggerty, supra.*) The ordinance does not undertake to regulate commerce between the States or interfere with the transportation of the mail, and amounts to but a reasonable regulation of the speed of trains within the corporate limits of the city, and such legislation has uniformly been held to be valid.

In *Sherlock* v. *Alling*, 93 U. S. 99, (approved in *Smith* v. *Alabama*, 124 U. S. 465,) it was held that a statute of Indiana giving a right of action to the personal representatives of the deceased where his death was caused by the wrongful act or omission of another, was applicable to the case of a loss of life occasioned by a collision between steamboats navigating the Ohio river, engaged in inter-State commerce, and did not amount to a regulation of commerce in violation of the constitution of the United States. On this point the court said (p. 103): "General legislation of this kind, prescribing the liabilities or duties of citizens of a State, without distinction as to pur-

suit or calling, is not open to any valid objection because it may affect persons engaged in foreign or inter-State commerce. Objection might with equal propriety be urged against legislation prescribing the form in which contracts shall be authenticated or property descend or be distributed on the death of its owner, because applicable to the contracts or estates of persons engaged in such commerce. In conferring upon Congress the regulation of commerce it was never intended to cut the States off from legislating on all subjects relating to the health, life and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce, and persons engaged in it, without constituting a regulation of it within the meaning of the constitution. * * * And it may be said, generally, that the legislation of a State not directed against commerce or any of its regulations, but relating to the rights, duties and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce, is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water, or engaged in commerce, foreign or inter-State, or in any other pursuit."

In *Stone* v. *Farmers' Loan and Trust Co.* 116 U. S. 307, it was held that in case of a railroad whose construction had been aided by Congress so as to establish a route of travel through several States, a State has the power to make all needful regulations, of a police character, for the government of the company operating the road within the jurisdiction of the State, and it was there said: "By the settled rule of decision in this court * * * it may make all needful regulations, of a police character, for the government of the company while operating its road in that jurisdiction. In this way it may certainly require the company to fence so much of its road as lies within the State; to stop its train at railroad crossings; to slacken speed while running in a crowded thorough-

fare; to post its tariffs and time-tables at proper places; and other things of a kindred character affecting the comfort, the convenience or the safety of those who are entitled to look to the State for protection against the wrongful or negligent conduct of others."

In *Crutcher* v. *Kentucky*, 141 U. S. 61, the court, speaking through Mr. Justice Bradley, said: "It is also within the undoubted province of the State legislature to make regulations with regard to the speed of railroad trains in the neighborhood of cities and towns; with regard to the precautions to be taken in the approach of such trains to bridges, tunnels, deep cuts and sharp curves; and, generally, with regard to all operations in which the lives and health of people may be endangered, even though such regulations affect, to some extent, the operations of inter-State commerce. Such regulations are eminently local in their character, and, in the absence of Congressional regulations over the same subject, are free from all constitutional objections and unquestionably valid."

In *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Illinois*, 177 U. S. 514, wherein the court held the statute of this State requiring all regular passenger trains to stop at county seats to be unconstitutional, as constituting a direct burden upon inter-State commerce, so far as it required through inter-State passenger trains to stop at such stations when adequate train service had otherwise been provided for local traffic, in distinguishing that case from a class of cases similar to the case at bar the court said: "The distinction between this statute and regulations requiring passenger trains to stop at railroad crossings and draw-bridges, and to reduce the speed of trains when running through crowded thoroughfares; requiring its tracks to be fenced and a bell and whistle to be attached to each engine, signal lights to be carried at night, and tariff and time-tables to be posted at proper places, and other similar requirements

contributing to the safety, comfort and convenience of their patrons, is too obvious to require discussion."

We think it clear that the Supreme Court of the United States, as shown by the above decisions, is committed to the doctrine announced by this court in numerous cases, to the effect that the passage of this ordinance was a valid exercise of the police power.   In *Whitson* v. *City of Franklin, supra,* it was ruled that the ordinance passed upon in that case, which limited the speed to four miles per hour, was not invalid on the ground that the railroad company was engaged in carrying the mail under a contract with the United States, and was required, by its contract, to transport the mail within a prescribed time, which could not be done if the towns and cities through which the road ran were allowed to regulate the speed of trains in passing through them.   And in *Clark* v. *Boston, etc. Railroad Co.* 64 N. H. 323, (10 Atl. Rep. 676,) the Supreme Court of New Hampshire held, the fact that a railroad was engaged in inter-State commerce does not deprive the legislature of the State through which it passes of the power to limit the rate of speed to six miles an hour across a highway in or near the compact part of a town.

We find nothing in *Illinois Central Railroad Co.* v. *Illinois,* 163 U. S. 142, and *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Illinois, .supra,* in conflict with the former decisions of the Supreme Court of the United States or the views herein above expressed.   Those cases held the statute requiring passenger trains to stop at county seats in Illinois, as applied to the facts then before the court, an unreasonable restriction upon inter-State commerce and the speedy transportation of the mail, but recognized the right of the State to make all necessary police regulations, and particularly pointed out legislation of the character of this as being within the police power.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*