JAMES ELMER PERRY v. DAVID TOZER.[1]

November 13, 1903.

Nos. 13,568—(59).

**Employment of Infant—Dangerous Machinery.**

The employment of an infant between the ages of fourteen and sixteen years in a sawmill, whose owner had not procured a certificate from the school superintendent or school board permitting such employment, as provided for in Laws 1895, p. 386 (c. 171), is illegal; and if injury results to the employee who is within such age from a failure properly to guard dangerous machinery at which he was required to work, these facts make a prima facie case for damages against the employer.

**Evidence.**

Evidence considered, and *held* that it reasonably tends to support the alleged negligence of defendant in failing properly to guard dangerous machinery operated in connection with a slab conveyor in a sawmill where plaintiff was employed; also that plaintiff had not assumed the risks incurred by his employment, and was not guilty of want of ordinary care which contributed to his injury.

**Damages.**

Where the evidence tended to show that a boy of fourteen years of age was so seriously injured that an amputation of his right leg below the knee was necessary, and that he suffered considerable pain and injury, *held*, that a verdict of $7,750 cannot be held excessive.

Action in the district court for Washington county by plaintiff, a minor under the age of sixteen years, by his guardian ad litem, to recover $25,000 for personal injuries. The case was tried before Williston, J., and a jury, which rendered a verdict in favor of plaintiff for $7,750. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Barrows & Morrison,* for appellant.

*Arthur W. Selover,* for respondent.

LOVELY, J.

Action to recover for personal injuries sustained by a boy of fourteen years while employed in defendant's sawmill at South Stillwater.

[1] Reported in 97 N. W. 137.

There was a verdict for plaintiff. This appeal is from an order denying defendant's motion for judgment notwithstanding the verdict, or a new trial in the alternative.

The evidence tended to show that plaintiff had worked in defendant's mill tending a "slab conveyor" twenty-four days when the accident occurred. The purpose of the slab conveyor was to transmit boards to two circular saws, where they were to be cut, and from thence carried to a place below, where pieces that could be used for lumber would be picked out by other servants. Part of the working machinery connected with the slab conveyor consisted of two metal sprocket wheels, the upper one fastened to a shaft near the top of a table where the saws were set, adjoining which plaintiff was required to stand, the surface being at his breast. The lower sprocket wheel was adjusted on a shaft three feet below the upper one. Both wheels were kept in motion by chain belting, whereby the attached shafts and saws thereon were propelled with great velocity. It was the plaintiff's duty to stand upon a platform adjacent to the lower wheel, which was covered to some extent by a wooden box. He was required to oil the machinery, handle the levers which stopped the movement of the sprocket chains and shafts, and keep pieces of wood from accumulating in front of the saws to prevent their being clogged. The necessity for removing the refuse wood from the front of the saws was quite frequent, and required plaintiff to use a stick, and to reach forward over the table to accomplish this purpose. When the accident occurred plaintiff was standing with his feet near the guard of the lower sprocket wheel. In attempting to remove pieces of refuse wood which were clogging the saws, he, under his claim, inadvertently intruded one of his feet into the rapidly moving gearing which was behind the outer surface of the box covering. It was caught and pulled into the machinery, inflicting injuries which required the amputation of his right leg below the knee, with severe consequent pain and suffering. There was a general verdict for plaintiff. Special questions were submitted at request of defendant, with answers favorable to plaintiff.

The alleged negligence for which plaintiff seeks recovery is: (1) His unlawful employment by reason of his immature years; (2) the neglect of defendant properly to guard the lower sprocket wheel and chain where his foot was caught; and (3) the failure by his employer

to give proper warnings and instructions of the risks incurred in the service. The assignments of error question the sufficiency of the evidence, the propriety of several instructions given at the trial, as well as the refusal to give others in behalf.of defendant.

From an examination of the entire evidence we are satisfied that it reasonably tends to show that the guards in front of the gearing where plaintiff's foot was caught, which to outward appearances protected him, would permit the slipping of the operator's foot into the revolving machinery behind the wooden box covering it; and whether the defendant was negligent in this respect was for the jury. Neither is it conclusive that the plaintiff was required to have made a more thorough examination of the gearing and guard near which he was required to place his feet while performing his duties, nor that he assumed the risks and hazards occasioned thereby; hence that part of the blended motion asking for judgment was properly denied. We cannot say, either, that plaintiff should have exercised greater caution, or failed in ordinary care, in preventing his foot from being caught. The evidence tended to show that he had received no warning of danger, and upon all these questions the verdict must be held conclusive, and allowed to stand, unless there was error in respect to a material instruction upon the burden of proof, and the damages are so large, in view of plaintiff's injuries, as to indicate that it was the result of passion and prejudice.

The serious question for our consideration on this review arises upon an instruction wherein the court, in reference to plaintiff's age, attempted to give effect to two legislative enactments of this state—Laws 1895, p. 386 (c. 171), as amended by Laws 1897, p. 625 (c. 360). The first section of chapter 171, p. 386, Laws 1895, forbids the employment of children under fourteen years of age in any factory, workshop, or mine. Section 2 prohibits any child who can attend school from being employed at any occupation during school hours. Section 3 provides that the commissioner of labor and assistant factory inspector shall have a right to demand a certificate of the physical fitness of infants for labor from some regularly licensed physician. Section 7, which is specially material here, provides that:

> "No child actually or apparently under sixteen years of age shall be employed in any factory, workshop or mercantile estab-

90 M.—28

lishment or in the service of any public telegraph, telephone or district messenger company, or other corporation, unless the person, firm or corporation employing said child procures and keeps on file * * * a full and complete list of such children employed therein."

Section 8 provides that in towns or cities having a superintendent of schools the certificate provided for in section 7 shall be issued by him, or when there is no superintendent of schools then by a member of the school board; and provides for a statement therein of special qualifications of the child. Section 10 provides for a visitation of the factory, workshop, etc., by the superintendent of education and the school board. Section 12 enacts that:

"Every owner, superintendent, agent or overseer of any factory, workshop," etc., "who employs or permits to be employed therein or thereby any child contrary to the provisions of this act and any person who employs a child contrary to the provisions of this act * * * shall be guilty of a misdemeanor and upon conviction thereof * * * shall be fined not less than $20 nor more than $50 for each and every offense. A failure to produce to an officer or employee of the bureau of labor, or to a member or authorized agent of the board of education or board of trustees of the city or school district in which the said child is employed, on demand, the certificate and register required by this act, shall be prima facie evidence of the illegal employment of the child whose certificate is not produced."

This law was amended by Laws 1897, p. 625 (c. 360), which provides that:

"No child under fourteen years of age shall be employed at any time in any factory or workshop or about any mine. No such child shall be employed in any mercantile establishment nor in the service of any telegraph, telephone or public messenger company except during the vacation of the public schools in the town where such child is employed. No child under sixteen years of age shall be employed at any occupation dangerous or injurious to life, limb, health or morals."

Section 5 of the previous law is amended so that it reads as follows:

> "Whenever it appears upon due examination that the labor of any minor who would be debarred from employment under the provisions of sections two and four of this act [prohibiting the employment of infants, so as to prevent their attendance upon school] is necessary for the support of the family to which said minor belongs, or for his own support, the school board or board of school trustees of the city, village or town in which said child resides may in the exercise of their discretion, issue a permit or excuse authorizing the employment of such minor within such time or times as they may fix."

The undisputed evidence tended to show that at the time of plaintiff's employment he was three days past his fourteenth birthday. No evidence was offered to show that the certificate provided for in section 12 of the act of 1895 had been procured, or was in possession of defendant, nor was it disputed that such employment was illegal in this respect, and subjected defendant to the penalties provided for. The instruction given by the trial court which counsel for defendant challenge, in substance stated that the fact that plaintiff was under sixteen years of age in connection with his employment in the sawmill was in violation of the statute, and the injury from the machinery which he was tending at the time made a prima facie case of negligence against defendant, so that, if the plaintiff had rested upon this proof, and no evidence had been introduced to contradict it, he would have been entitled to recover. But it was further stated by the court in qualification that this prima facie showing might be rebutted by evidence to show that the machine which caused plaintiff's injury was properly guarded, or that the plaintiff himself contributed to the accident.

Leaving out of consideration the probable effect of these instructions, it may be said that the evidence to show that plaintiff exercised the care for his own protection required by one of his years was sufficient to sustain the verdict, and, had the court omitted to instruct that the burden was upon the defendant to establish these facts in defense, we should not have doubted that it was our duty to approve the findings of the jury; but the question is clearly presented by this instruc-

tion whether the violation of the statute, followed by injury from causes necessarily incident to the employment and business of defendant, shifted the burden otherwise imposed upon plaintiff, but upon mature reflection we think our doubts in this respect must be resolved in favor of the plaintiff.

Counsel for defendant insist that the statutes from which we have quoted at length, so far as the same related to children of the age of plaintiff, were intended to secure for their benefit educational benefits only; therefore could not be regarded as a proximate cause of an accident occurring through the neglect of the master to furnish reasonably safe instrumentalities for their work upon dangerous instrumentalities, or in properly protecting the same, or the failure to give necessary instructions to an injured lad of the specific risks he incurred. We cannot adopt the view that the sole object of these statutes was to secure educational advantages to children. Neither the history of the subject nor the terms of the enactments themselves will justify such a conclusion.

About the middle of the last century, when England had achieved marked success in the development of its mines, which furnished the means to operate its workshops by steam power, and thereby attained its commercial supremacy in the world markets, cheap child labor was largely utilized, to the detriment of the morals, health, and personal safety of very many young children, which aroused the humane and charitable impulses of the reformers and philanthropists of that country, who conducted an earnest and effective propaganda to mitigate the evils that deprived the objects of their solicitude of the benefits of education and moral instruction, subjecting them to the evils of a servile peonage, to minister to the selfishness of the employer. In 1878 this agitation resulted in a parliamentary codification of several former enactments embracing a complete system to enlarge the scope of existing laws, wherein not only the direct interests of the children themselves were considered as an important factor in the scheme, but also the prevention of ignorance, suffering, and crime, with their results to the public welfare. A reference to the history of the "factory acts" of England, which may be found in any modern encyclopædia, clearly indicates that these laws were adopted not only to diminish ignorance and immorality, but also to prevent the maiming and in-

juring of young children in hazardous occupations, whereby they would become burdens upon the public.

Our own statutes from which we have quoted above are not as complete nor as systematically arranged as the perfected English scheme, yet it seems quite apparent that the protection of life and limb among the uneducated infants of the state was intended as well as in the English prototype. While a distinction is made in our law between children under fourteen years and those between fourteen and sixteen years, the difference is one of degree, not in the obligations imposed. This is but a fair inference from our previous views of the capacity of infants to protect themselves from the dangers contemplated, for we do not have to look beyond the decisions of this court to find evidence that the intelligence of the youth who are engaged in hazardous employments is a material fact for the consideration of the jury to determine whether they assume the risks incurred or contribute to unfortunate results arising therefrom. Twist v. Winona & St. P. R. Co., 39 Minn. 164, 39 N. W. 402; Hepfel v. St. Paul, M. & M. Ry. Co., 49 Minn. 263, 51 N. W. 1049.

Counsel's claim, broadly stated, is that it was the operation of the machinery, and, at most, the improper protection of the same, that was the proximate cause of the injury, and not the violation of the statute. This claim finds support in some decisions, notably that of Goodwillie v. London, 108 Wis. 207, 84 N. W. 164. But authorities of the highest respectability hold that the violation of a statute prohibiting the employment of a child in a hazardous occupation, where such employment is prohibited by law, establishes a right to recover for negligence; hence in such cases liability is to be presumed from the employment in disobedience of law. Marino v. Lehmaier, 173 N. Y. 530, 66 N. E. 572; Breckenridge v. Reagan, 22 Ohio C. C. 71; Morris v. Stanfield, 81 Ill. App. 264; Queen v. Dayton, 95 Tenn. 458, 32 S. W. 460. Unless we can say that the statute has no effect in a suit for damages where the law had been violated, we are required to hold that the employment which the legislature positively forbids furnishes evidence tending to show at least presumptively that one of the causes of the injury in this case was the violation of the statute, in analogy to the well-known doctrine that ordinances regulating the hitching of horses, the speed of trains in cities, or other subjects of municipal control are

held to be evidence to sustain the charge of negligence. Weyl v. Chicago, M. & St. P. Ry. Co., 40 Minn. 350, 42 N. W. 24; Dugan v. St. P. & Duluth R. Co., 43 Minn. 414, 45 N. W. 851.

It is well settled that a wrongdoer is at least responsible for the results likely to occur, or resulting as a natural consequence from his misconduct, or such as might have been reasonably anticipated. Ransier v. Minneapolis & St. L. Ry. Co., 32 Minn. 331, 20 N. W. 332. In cases of tort the application of the rule as to proximate cause is that, where several concurring acts, one of them a wrongful omission of defendant, produce an injury, and it would not have been produced but for such wrongful act or omission, such act or omission is the proximate cause of an injury which might have been anticipated as a natural consequence thereof. Campbell v. City of Stillwater, 32 Minn. 308, 20 N. W. 320. And the doing of an act prohibited by municipal regulation may be regarded as the proximate cause of an injury which directly resulted from other sources. Salisbury v. Herchenroder, 106 Mass. 458.

It is, however, of doubtful utility to refine upon the rule expressed by the maxim, "Causa proxima non remota spectatur," for plaintiff's right of action rests upon the broad ground that, where a statute requires an act to be done or abstained from by one person for the benefit of another, then an action lies in the latter's favor against the former for neglect in such act or abstinence, even though the statute gives no special remedy. Even the imposition of a penalty by the statute does not oust the remedy by indictment, nor, a fortiori, by suit, for negligence, unless the penalty be given to the party injured in satisfaction for injury. Wharton, Neg. § 443. This principle has been recognized and applied in this state, and it is now well settled that, where a statute or municipal ordinance imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty he is liable to those for whose protection or benefit it was imposed for any injuries of the character which the statute or ordinance was designed to prevent. Osborne v. McMasters, 40 Minn. 103, 41 N. W. 543.

From the investigation we have made of the reasons for the statute upon which the instruction of the trial court was based, we have reached the conclusion that the certificate which the school authorities

are to give upon their examination of an infant was intended to secure educational advantages to the subjects of legal solicitude, and likewise to vest in the school officials the power to determine, in the exercise of wise judgment, whether, from the intelligence and capacity of such infant, it would be reasonably safe for him to engage in dangerous occupations. The failure to obtain this certificate was a violation of the statute, and entitled the plaintiff to a remedy for the negligent acts of defendant. Hence it was proper to give effect to the conceded disregard of the law, and, where an injury is within the mischief of the statute, it is not easy to see how less weight could be given to the statute than was expressed by the instruction of the trial court, which makes the violation of the law, with consequent injury from the dangerous machinery in use in defendant's mill, prima facie, but not conclusive, evidence of plaintiff's right to recover.

In the remaining assignments there are several criticisms of the charge of the trial court and the refusal of defendant's requests. We have considered these carefully, and are of the opinion that the charge as a whole properly defined the relation of master and servant, and the relative obligations in the exercise of the duty and care owing to each by the other. Where, in some instances, the court's instructions are not accurate expressions of the law, a reference to other portions of the charge shows that the jury could not have been misled to defendant's injury. Of the charge as a whole it may be said that it was exceptionally clear and able, and gave the law required for the protection of defendant's interest as effectually as could be required.

The wounds inflicted upon plaintiff were severe and extremely painful. He was confined to the house for a considerable portion of time undergoing a surgical operation which has crippled him for life. In view of his age, the severity of his injuries, the suffering caused thereby, and his permanent disability, we do not think that the inference is to be drawn from the verdict of $7,750 that it was the result of passion and prejudice by the jury.

Order affirmed.