Jones, J.
It appears from the charge of the court in its direction to the jury to return a verdict for the defendant that the ordinance of the village of Port Clinton, regulating the speed of trains and prohibiting them from running more than fifteen miles an hour, having been excluded, there remained under the undisputed facts no testimony of the defendant’s negligence upon which the plaintiff could go to the jury. The charge in that connection further discloses that the trial court was evidently of the opinion that the injury was caused by the contributory negligence of the decedent. In his charge, directing a verdict, the trial judge said:
“This decedent was told the train was coming, and he was told to get off the track, and he did get off the track; so that warning and lights or anything of that kind wouldn’t have done him any good. He was seen as the locomotive passed standing where or about where he got off the track. The train went on and afterwards he was found dead or nearly dead. There is nothing to show what struck him, although the inference might fairly arise that he was hit by a train; but if he had kept a reasonable distance from the train and track he wouldn’t have been hit. He got so close that he was hit by the train. *' * *
*182 “Now, that is the situation we have here. If the ordinance doesn’t apply, they could run their trains at any speed they saw fit; at least so far as-any duty was owing to a man who stood by the side of their track and was watching the train go by. Substantially the same situation would be presented if one of the jurors here were standing on the track out at the Lake Shore crossing on Columbus Ave. and saw a train coming and got ofif the track far enough so that part of the train passed without' injuring him, and then while the train was passing got so close that some part of the train hit him, he couldn’t recover because it would be his own carelessness.”
Two witnesses testified that the train traveled at the rate of thirty miles an hour in approaching the bridge. The ordinance of the village of Port Clinton limited the speed to fifteen miles per hour within the village. The trial court excluded the ordinance, it is said, on the authority of Cleveland, A. & C. Ry. Co. v. Workman, Admr., 66 Ohio St., 509, and evidently held that the statute and ordinance imposed no duty upon the part of the railway company, in respect to speed, in favor of those not upon public crossings. The case referred to does decide that the crossing-signal statutes (Section 8853 et seq., General Code) do not inure to the benefit of persons who are on the track and not at the crossing, but this decision was arrived at by holding that the obvious construction of those statutes applied only to public crossings, and the court so states in its opinion, ryhere, at page 542, it is said: “The statute obviously is not for the protection of persons who *183 are not crossing the track or about to do so * * *. The signals are not required at any other time. This is the construction which has been adopted in several jurisdictions where the question has arisen.” The section of the statute there involved applied to the requirement to give signals when approaching a public crossing, and it was construed so as to impose upon a defendant the duty of complying therewith for the protection of those using the crossings. However, the speed statute involved in this case needs no construction. Its language is clear and comprehensive and authorizes municipalities to regulate speed, not only at public crossings, but within the corporate limits. The section follows: “Sec. 3781. When a railroad track is laid in a municipal corporation, the council by ordi•nance may regulate the speed of all locomotives and railroad cars within the corporate limits, but * * * in villages * * * it shall not require a less rate than eight miles an hour.”'
Here it is not a question of statutory construction, but of legislative and municipal power. The legislature has authorized the regulation of speed within the corporate limits, and, responding to that authority, the municipality, by ordinance, provided that such speed should not exceed fifteen miles an hour.
“City ordinances limiting the rate of speed of trains within the city limits have been sustained even if thef to some extent impair the ability of the corporation to give its patrons satisfactory service, if they are reasonably necessary for the protection of the public. Such an ordinance ap *184 plies to the operation of trains anywhere within the city limits, whether they are passing along or across public streets or are wholly upon the railroad’s private right of way.” 19 Ruling Case Law, 855; Chicago & Alton Rd. Co. v. City of Carlinville, 200 Ill., 314; Washington & So. Ry. Co. v. Lacey, 94 Va., 460; Whitson v. City of Franklin, 34 Ind., 392; Knobloch v. C., M. & St. P. Ry. Co., 31 Minn., 402; Prewitt v. Mo., K. & T. Ry. Co., 134 Mo., 615, and Jackson v. Kansas City, Fort Scott & Memphis Rd. Co., 157 Mo., 621.
The foregoing cases are authority for the principle that under ordinances of a character similar to that adopted by the village of Port Clinton a valid exercise of the municipal police power, regulating the speed of • trains, extends to places within the municipal limits other than public crossings. This power is exercised for the safety of the public, and, primarily, the character of the regulations, including the places within the corporate limits where the speed is to be regulated, is committed to the legislative authority of such municipality. The presumption of law obtains that such regulation is necessary and reasonable, and before the court will interfere with the discretion committed to the public authorities it must clearly appear that the exercise of such power upon the part of the, municipality is unreasonable or unnecessary for the public safety. And only where it is shown clearly to the court that the exercise oí this power is unreasonable and arbitrary, unduly restricting the speed of trains within the corporate limits, or where it unreasonably limits the speed of the trains *185 in open or outlying sections of the municipality where the public safety is not affected, may the court declare such regulatory ordinance unconstitutional and void.
The record does not disclose any facts which tend to show that the ordinance limiting the speed to fifteen miles within the village of Port Clinton was an unreasonable exercise of the police power vested in the village council. Having proven that the speed of the train was thirty miles an hour, the ordinance should have been admitted; though it still remained to be proven that the excessive speed was the proximate cause of the accident. That, including the question of contributory negligence, was for'the jury to determine.
The trial court was of the opinion that having excluded the ordinance, the evidence disclosed no violation of any duty to plaintiff upon the part of the defendant. Before a plaintiff can recover he must show that the defendant neglected some duty or obligation either existing at common law or imposed by statute, which it owes to him. Irrespective of any duty imposed under the ordinance, the petition stated sufficient facts to support a common-law duty due to decedent. The petition alleged that the decedent and other members of Company B were guarding the bridge and right of way of the defendant with its full knowledge; that on the night when the accident occurred, and while going at a dangerous rate of speed, the defendant failed to give decedent any warning or alarm of its approach. The defendant’s answer admits that the company, with the decedent as one of its member^, *186 was guarding its railway bridge, and vicinity, under orders of the United States government, and that it knew that the duties of the decedent required him to be upon the right of way of the defendant in the vicinity of the bridge. The decedent was not a mere licensee. Such being the case, it was a question for the jury to determine whether under the admissions of the defendant and the circumstances detailed in the evidence ordinary care had been exercised by the railroad company in view of the situation thus disclosed by the pleadings and evidence, and whether its lack of exercise was the proximate cause of the injury.
The only serious question affecting the right of the plaintiff to recover is that of contributory negligence, and the remarks of the court in directing the verdict for the defendant, at the close of the plaintiff’s evidence, indicate that the trial court felt that the decedent’s conduct. precluded a recovery. The night was dark, and the exact manner in which the decedent came to his death is not apparent from the evidence, but it does appear that when the accident happened Blanche was at the time on his way to relieve the guard, who, on account of the darkness, was unable to see who it was, and accordingly challenged him and ordered him to advance and be recognized. Whether Blanche came to his death by being struck with some projecting part of the train in passing, or whether he stumbled upon the' interlocking rods paralleling the track, is uncertain. There is no witness who testified positively as to the manner of his injury, but'it is reasonably certain that the cause of his death at the *187 time he responded to the challenge was the passing train of the defendant. Under the circumstances the reasonable inference might arise that the decedent was himself exercising ordinary care, especially in view of the fact that two of his superior officers testified that they heard no signal given by the approaching train, although its headlight could have been seen. There is testimony in the record tending to show that one Patterson, the guard whom Blancke was advancing to relieve, seeing the dangerous situation in which Blancke was, said to him, “for Christ’s sake get off the track.” Whether this admonition was given in time, or whether Blancke disregarded it, and whether these or other facts justified the conclusion that the decedent himself contributed to his death, were questions which should have been submitted to the jury..
For the reasons given the judgment of the lower courts will be reversed and the cause remanded to the common pleas court for a new trial.

Judgment reversed.

Johnson, Hough, Wanamaker, Robinson and Matthias, JJ., concur.
Marshall, C. J., dissents.